UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| SHARON K. POPE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 2:13-CV-88 RLM |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant | ) | |

## OPINION AND ORDER

Sharon Pope seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and Supplemental Security Income under the Social Security Act, 42 U.S.C. §§ 423 and 1381 *et seq*. The court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the court reverses and remands this case to the Social Security Administration for further proceedings.

Ms. Pope asserted disability as of April 26, 2009 due to cirrhosis and diabetes. Her applications were denied initially, on reconsideration, and after an administrative hearing at which she was represented by a non-attorney representative.

In evaluating Ms. Pope's claim of disability, the ALJ considered the medical evidence presented at the hearing and testimony from Ms. Pope and a vocational expert, Thomas Dunleavy. The ALJ found that Ms. Pope had both severe physical impairments (cirrhosis of the liver, diabetes, alcohol dependence, chronic

obstructive pulmonary disease (COPD), hypertension, and obesity) and non-severe impairments (back pain and gastrointestinal problems), but that her impairments alone and in combination didn't meet or equal the requirements of a listed impairment, or preclude her from performing a limited range of light work and her past relevant work as a fast food worker and waitress.[1] The ALJ therefore concluded that Ms. Pope wasn't disabled within the meaning of the Act, and wasn't entitled to benefits.

When the Appeals Council denied Ms. Pope's request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

Ms. Pope contends that the ALJ gave too little weight to the opinions of the agency's consulting medical expert (Dr. Slodki) and her treating physicians (Drs. Kirby and Chand), failed to consider the combined effect of her impairments, and didn't adequately explain why her statements about the intensity, persistence and limiting effects of her symptoms weren't credible. The court agrees.

The issue before the court isn't whether Ms. Pope is disabled, but whether substantial evidence supports the ALJ's decision that she isn't disabled. Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097

---

[1] "Light work" as defined in 20 C.F.R. § 404.1567(b):
involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

2

(7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434-435 (7th Cir. 2000), but it "will conduct a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). The ALJ isn't required "to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d at 1160. The ALJ hasn't done so in this case.

"In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing [or listings] by name and offer more than a perfunctory analysis of the listing." Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004). The ALJ found that Ms. Pope's impairments didn't meet or medically equal any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, but she addressed only one – listing 1.02A (major dysfunction of a weight-bearing joint due to obesity) – and concluded that there was no evidence

3

that Ms. Pope's obesity "resulted in an inability to ambulate effectively as defined by th[at] listing." Such a perfunctory analysis isn't enough.

"Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." Barnett v. Barnhart, 381 F.3d 664, 670 (7th Cir. 2004); Farrell v. Sullivan, 878 F.2d 985, 990 (7th Cir. 1989) (designated medical expert must consider the equivalency issue); 20 C.F.R. 404.1526(b) ("We will also consider the medical opinion given by one or more medical or psychological consultants designated by the Commissioner in deciding medical equivalence."). Dr. Slodki was the agency's designated medical expert in this case. After reviewing Ms. Pope's medical records, Dr. Slodki opined that Ms. Pope had a combination of impairments (diabetic/alcoholic peripheral neuropathy and cirrhosis of the liver with ascites) that equaled listings 5.05 (cirrhosis with ascites), 11.14 (peripheral neuropathies), 9.08A (diabetes mellitus with peripheral neuropathy), and 12.09 (alcohol abuse). The ALJ gave no weight to Dr. Slodki's opinion, made a cursory finding with respect to listing 5.05, and didn't address any of the other listings Dr. Slodki mentioned. She simply concluded that "there [was] no evidence that the combination of [Ms. Pope's] impairments [was] so severe as to equal listing 5.05," and that Dr. Slodki's opinion was "inconsistent with the objective medical evidence," didn't contain a discussion of the evidence or an explanation of his opinion, and "incorrectly state[d] that the claimant depends upon a cane to ambulate."

If the basis of Dr. Slodki's opinion wasn't readily discernable or the ALJ needed clarification, she "ha[d] a duty to solicit additional information to flesh out" the consulting medical expert's opinion. Barnett v. Barnhart, 381 F.3d at 669. She didn't do so, and her findings about to Dr. Slodki's opinion and the severity of Ms. Pope's impairments specifically aren't adequately supported by the record and are insufficient.

The ALJ's analysis of the medical opinions offered by Ms. Pope's treating physician and orthopedic surgeon, Dr. Karl Kirby and Dr. Kishan Chand, is flawed in the same way.

Dr. Kirby completed a questionnaire in December 2010, in which he stated that he treated Ms. Pope between September 16, 2010 and November 23, 2010. Dr. Kirby didn't identify the frequency of treatment, but the medical records before the ALJ showed that he saw Ms. Pope on October 22, 2010 for a routine gynecological exam and on November 23, 2010 for a follow-up evaluation of her diabetes.[2] Dr. Kirby indicated that Ms. Pope had been diagnosed with hypertension, chronic back pain, COPD (chronic bronchitis), diabetes type II, obesity, and cirrhosis, and opined that she could sit, stand, and walk for no more than one hour in an eight-hour day; could lift and carry up to five pounds occasionally; had moderate limitations in her ability to grasp, turn, twist objects,

---

[2] Exh. 27F contains "Miscellaneous Medical Records" that appear to have been submitted after the ALJ issued her decision (see AR at p. 16) and show that Dr. Kirby also saw Ms. Pope for follow-up evaluations of her diabetes on December 7, 20 and 30, 2010, March 7, 2011, May 11, 2011, and November 17, 2011.

5

and use her arms for reaching due to back and abdominal pain. He indicated that Ms. Pope frequently experienced pain, fatigue or other symptoms that were severe enough to interfere with attention and concentration, would need to take ten-minute rest breaks every thirty minutes, needed to avoid fumes, gases, humidity, dust, and couldn't push, pull, kneel, bend, or stoop. Dr. Kirby also indicated that Ms. Pope's impairments would last at least twelve months.

Ms. Pope's treating orthopedic surgeon, Dr. Chand, completed a questionnaire in January 2011, in which he stated that Ms. Pope had been diagnosed with chondromalacia patella, osteoarthritis in the lumbar spine and left knee, chronic knee pain, COPD, and obesity, and that he had treated her once a month from October 25, 2010 to January 17, 2011. Dr. Chand opined that Ms. Pope could frequently lift up to ten pounds; could carry up to five pounds frequently and carry ten to twenty pounds occasionally; could sit for four hours (on and off) in an eight-hour day, and stand or walk for up to one hour (on and off); and had no limits on reaching, fine manipulations, grasping, or twisting. He reported that her prognosis was "fair", but that Ms. Pope frequently experienced pain, fatigue or other symptoms severe enough to interfere with attention and concentration, that she would need to take one or two ten to fifteen minute breaks in an eight-hour work day to rest; and that she was likely to miss work two to three times a month as a result of her impairments or treatment. Dr. Chand also opined that Ms. Pope would need to avoid temperature extremes, humidity and

6

dust; couldn't push or pull anything over ten pounds; and couldn't kneel, bend, or stoop.

The ALJ gave no weight to either Dr. Kirby's or Dr. Chand's assessment of Ms. Pope's functional capacity. The ALJ noted that neither Dr. Kirby nor Dr. Chand had a longitudinal treatment relationship with Ms. Pope, and that their opinions were inconsistent with Ms. Pope's December 2010 report of "only very mild pain", and with other medical records that "generally indicate[d] normal findings," showed only mild arthritis in her lower facet joints, and indicated that her back and knee pain were "recent symptoms."

A treating physician's opinion is entitled to "controlling weight" if it's "well supported by medical findings and not inconsistent with other substantial evidence in the record." Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000); *see also* 20 C.F.R. § 404.1527(d)(2). When a treating source's opinion isn't given controlling weight, the ALJ must consider these factors in deciding what weight to give it: "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." Campbell v. Astrue, 627 F.3d 299, 308 (7th Cir. 2010); 20 C.F.R. § 404.1527(c)(2). "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003).

7

The ALJ might have identified a sufficient basis for rejecting Dr. Kirby's assessment of Ms. Pope's impairments — he'd seen her only twice, didn't provide medical findings to support his opinion, and reached conclusions that were generally inconsistent with other evidence in the record. The same can't be said for her analysis of Dr. Chand's opinion.

The ALJ's decision doesn't adequately address the relevant factors set out in 20 C.F.R. § 404.1527(c)(2) with respect to Dr. Chand's assessment of Ms. Pope's spine and knee impairments, and so is insufficient. It appears that she gave little or no weight to Dr. Chand's status as an orthopedic surgeon, or that he treated Ms. Pope for three months for impairments related to his expertise (spine and knee pain), or that his assessment of Ms. Pope's functional capacity was consistent with other medical evidence in the record, most notably the opinion offered by the agency's consulting medical expert, Dr. Slodki. If the ALJ needed clarification, she could have solicited additional information from both Dr. Chand and Dr. Slodki. She didn't do so.

Ms. Pope contends that the ALJ also failed to consider the effects of her impairments in combination in determining her residual functional capacity and ability to perform her past relevant work. The court agrees.

An ALJ must consider the aggregate effects of all of the claimant's impairments in the residual functional capacity assessment, including those that are non-severe. Castile v. Astrue, 617 F.3d 923, 927 (7th Cir. 2010); 20 C.F.R. § 404.1545(e). The decision must be reversed if the impact of non-severe

impairments isn't fully considered. Denton v. Astrue, 596 F.3d 419, 423 (7th Cir. 2010).

To the extent the ALJ's decision about the severity of Ms. Pope's impairments and her residual functional capacity was premised on her assessment of Ms. Pope's credibility, it is insufficient, too. The ALJ employed boilerplate language in explaining her credibility determination:

> . . . the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. . . . [which limit her to] less than a full range of light work. . . . In addition to the objective evidence, I have considered the factors enumerated in SSR 96-7 in evaluating the intensity, persistence and limiting effects of the claimant's symptoms.

She concluded that Ms. Pope's testimony regarding the severity and limiting effects of her impairments wasn't "fully credible" because it wasn't supported by objective medical evidence and because of "several inconsistencies in the record and in the claimant's testimony at the hearing," regarding whether she continued to drink after March 2008, whether she worked after 2007, and whether she was actually adhering to a low-salt, diabetic diet or only "trying" to adhere to the diet.

The ALJ's credibility determination is premised in large part on her rejection of the corroborating medical opinions offered by Drs. Slodki, Chand, and Kirby, and her assessment of the medical evidence was inadequate. Courts have justly criticized the boilerplate language employed in this case because of its unhelpfulness. Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012); Parker v

9

Astrue, 597 F.3d 920, 922 (7th Cir. 2010). "If the sentence means what it says, one must read the opinion from back to front, first identifying the ALJ's residual functional capacity, then looking to the claimant's testimony, sorting out what supports the finding (and hence was credible) from what doesn't support the finding (and hence wasn't believed)." Brindisi v. Barnhart, 315 F.3d 783, 787-788 (7th Cir. 2003).

The use of the boilerplate language doesn't require reversal, if the ALJ points to information that justifies her credibility determination, *see* Shideler v. Astrue, 688 F.3d 306, 311-312 (7th Cir. 2012); Getch v. Astrue, 539 F.3d 473, 483 (7th Cir. 2008), but the ALJ didn't do that in this case, and the court shouldn't have to comb the record in search of evidence supporting her decision.

Whether Ms. Pope's statements are credible and whether she is capable of performing her past relevant work or other jobs are questions for the ALJ, not the court. Simila v. Astrue, 573 F.3d at 513; Powers v. Apfel, 207 F.3d at 434-435. The court's job is to assure that a logical bridge connects the evidence and the ALJ's finding, *see* Giles ex rel. Giles v. Astrue, 483 F.3d 483, 486 (7th Cir. 2007), and the bridge isn't complete in this case.

Neither substantial evidence nor an adequate discussion of the issues support the ALJ's findings with respect to the severity and limiting effects of Ms. Pope's physical impairments. When the court can't see an "accurate and logical bridge between the evidence and the result," remand is required. Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996).

Accordingly, the final decision of the Commissioner of Social Security is REVERSED and the matter REMANDED.

SO ORDERED.

ENTERED:   September 19, 2014

/s/ Robert L. Miller, Jr.
Judge
United States District Court